Joel J. Tyler, J.
Defendant is charged under subdivision 3 of section 265.05 of the Penal Law with illegal possession of a *142 certain firearm, namely, a Smith and Wesson .38 calibre revolver.
The court is asked to decide, upon a preliminary hearing, whether or not the People have established a prima facie case so as to hold the defendant for trial.
The testimony of the complainant, Detective John Miles, is as follows:
(a) At about 5:00 a.m. on August 22, 1969, Officer Miles was called to the emergency room of Knickerbocker Hospital in Manhattan. There he found a woman (herein referred to as Miss E.) who advised him she had been raped by the defendant, and that he possessed a revolver.[1]
(b) The officer then sought the defendant, who finally, some days later, came to the police precinct voluntarily. He denied he raped Miss E., but admitted he was “ necking ” with her in his car and at that time he had a revolver in his possession. He then delivered that revolver to the officer and stated that it was the same gun he had the evening of the necking incident. He also presented the officer with a duly issued New York City Police Department license or permit for that gun.
(c) In the course of Detective Miles’ investigation, he confirmed that defendant was employed as a “ safety officer ” by the New York State Department of Mental Hygiene at its institutional facility in The Bronx. Further, in response to a question, defendant advised the officer that he had another gun at home not licensed by the Police Department, but which defendant claimed he had a legal right to possess by virtue of his position with the Department of Mental Hygiene.
(d) The officer then accompanied defendant to his home, where defendant removed a recently purchased Smith and Wesson .38 calibre pistol from a locked closet and handed it to the officer. This second gun is the basis for the charge of illegal possession of a firearm.
Subdivision 3 of section 265.05 of the Penal Law prohibits any person to possess any firearm, and if he does, he commits a Class A misdemeanor; unless, of course, he is excepted from *143 such restraint by section 265.20 of that law. That latter section declares ‘ ‘ peace officers as defined in section one hundred fifty-four of the code of criminal procedure ” as exempt from the prohibitions of said subdivision 3 of section 265.05.
Section 154 of the Code of Criminal Procedure specifies and designates some.60 classes of officials as “ peace officers.” Such officials possess the authority, at all times, to make arrests as provided in chapters III and IV of the Code of Criminal Procedure and they are not subject to criminal prosecution under section 265.20 of the Penal Law, if they possess a firearm without a license.
Of course, the defendant, as a safety officer employed by the State Department of Mental Hygiene, is not designated as a peace officer under said section 154; and, therefore, may not possess or carry an unlicensed firearm with impunity unless he is exempted by another statute (Code Crim. Pro., § 960).
The defendant argues that he had a right to possess an unlicensed firearm by virtue of subdivision 4 of section 34 of the Mental Hygiene Law. That law now reads (L. 1968, eh. 750, eff. June 16, 1968) that safety officers of the Department of Mental Hygiene designated and 1 ‘ acting as policemen, shall possess all the powers of peace officers while performing duties in or arising out of the course of their employment.”
It appears that defendant can only prevail if he meets two prerequisites, stated in said section 34 of the Mental Hygiene Law.
1. Firstly, he must demonstrate that, although he was employed as a “ safety officer,” he was also designated as a “ policeman ” by the Director of the mental institution in which he was employed; and
2. He must further prove that at the time he possessed the gun, namely, when he handed it to Officer Miles, he was, in fact, “ performing duties in or arising out of [his] employment.”
As to the first prerequisite, Officer Miles testified that he confirmed that defendant was employed as a safety officer at Bronx State Hospital, an institution under the authority of the State Department of Mental Hygiene, but there was no testimony that defendant was properly designated a “ peace officer.” However, as part of his law memorandum, defendant submitted an identification card, with his photo thereon, and signed by the Bronx State Hospital Director, indicating that defendant, as a safety officer, was designated as a “ Special Policeman.”
However, as to the second requirement, there is no evidence whatsoever, by or on behalf of the defendant, that he was per *144 forming any duties in or arising out of the course of Ms employment at the time he was arrested in possession of the unlicensed firearm. Accordingly, he appeared to have violated the prohibitions of subdivision 3 of section 265.05 of the Penal Law.
All those officials specified as peace officers in said section 154 of the Code of Criminal Procedure are deemed peace officers at all times, whether on or off duty. However, that is not the case with a designated ‘ ‘ police officer ’ ’ under subdivision 4 of section 34 of the Mental Hygiene Law. They may act as and “possess all the powers of peace officers” only while and restricted to the times when they are actively “ performing duties in or arising out of the course of their employment.”[2]
Defendant’s possible mistaken belief that the aforesaid Mental Hygiene Law furnished Ms authority to possess the gun on or off duty, will not excuse the offense committed. (People v. Demorio, 123 App. Div. 665, 666.)
Accordingly, defendants motion to dismiss the complaint is denied and defendant is held for trial, in that there is sufficient cause to believe the defendant guilty of the crime charged.

. Defendant had also been charged with the crime of rape (Penal Law, § 130.35) under separate Docket A-13392. Defendant stipulated that both the felony hearing (rape) and the misdemeanor preliminary hearing (possession of a gun) were to be held simultaneously, with the same testimony to be applied to each where relevant, but with separate decisions to he rendered for each. Miss E. was the complaining witness in the rape charge, while Detective Miles was the complaining witness on the gun charge. Miss E. had, previous to Detective Miles, similarly .testified that defendant “ pulled a gun on me.” After said joint hearing, the court held defendant for the Grand Jury with respect to the felony and reserved decision, now herein made, as to the other offense.

. It is significant that the authority of a safety officer to possess and carry a firearm is further restricted even while on duty at the institution employed, by virtue of the rules and regulations of the Commissioner of the Department of Mental Hygiene, which requires that “safety officers and employees acting as police officers on grounds under the jurisdiction of the department” may not carry firearms “ without written consent or authorization of the commissioner of the department of mental hygiene ” (Department of Mental Hygiene General Orders, § 34 (4), dated Jan. 3, 1969). It would appear that written consent or authorization is required. It would further appear that such restriction upon such safety officers is proper. (See Mental Hygiene Law, § 7; Anemone v. Kross, 23 Misc 2d 186.)