Living Saypol, J.
78) by two corporate unions whose members are respectively, Sergeants and Lieutenants (S & L) and Bridge and Tunnel Officers (B & TO) in the employ of the Triborough Bridge and Tunnel Authority (TBTA). TBTA, two of its named executives, the Police Commissioner of the City of New York and the five District Attorneys in the New York City counties are the respondents. The relief sought includes mandamus to compel recognition of the employees as peace officers and allowing them to carry weapons including firearms while at work, and to enjoin arrest and criminal prosecution for possessing weapons. There is no motion to dismiss.
In their answer to the petition, the Police Commissioner and the Attorney-General of New York representing three of the named District Attorneys, by affirmative defense, put in issue the standing of the corporate petitioners to sue. That defense is not raised by TBTA. Decision will be on the merits.
*931 The following are the relevant statutes:
Chapter 1032 of the Laws of 1973 (Public Authorities Law, § 553, subd. 7-b). “ Notwithstanding any inconsistent provision of law to the contrary, the bridge and tunnel officers, sergeants and lieutenants employed by the authority shall have the powers of peace officers as otherwise provided by law while engaged in the performance or discharge of their duties.” (Emphasis supplied.)
Section 265.05 of the Penal Law. “ Possession of weapons and dangerous instruments and appliances.— * * * 3. Any person who has in his possession any firearms, gravity knife, switchblade knife, cane sword, bill, blackjack, bludgeon, metal knuckles, sandbag, sandclub or slungshot is guilty of a class A misdemeanor, and he is guilty of a class D felony if he has previously been convicted of any crime.”
Section 265.20 of the Penal Law. ‘ ‘ Exemptions — a. Sections 265.05, 265.10, 265.15 and 270.05 shall not apply to:
“ 1. Possession of any of the weapons, instruments, appliances or substances specified in sections 265.05 and 270.05 by the following:
“ (a) Persons in the military service of the state of New York when duly authorized by regulations issued by the chief of staff to the governor to possess the same, members of the division of state police, peace officers as defined in subdivision thirty-three of section 1.20 of the criminal procedure law and persons appointed as railroad policemen pursuant to section eighty-eight of the railroad law.” (Emphasis supplied.) The sergeants and lieutenants, before the quoted 1973 amendment of the Public Authorities Law were allowed to be armed on the job as special officers pursuant to the following provisions of the Administrative Code of the City of New York: “ § 434a-7.0. * * * e. The [police] commissioner, upon the application of the head of any agency, public authority exercising jurisdiction within the city, or state agency, may appoint and swear any number of officers or employees of such agency or authority to do special duty at any place in the city, on behalf of such agency. The special patrolmen so appointed shall be subject to the orders of the commissioner and shall obey the rules and regulations of the department and conform to its general discipline and to such special regulations as may be made and shall during the term of their holding appointment possess all the powers and discharge all the duties of a peace officer while in the performance of their official duties.” As to this class, there is a stated intention to let it continue.
*932 Since the amendment of the Public Authorities Law, TBTA has issued an administrative regulation restricting the possession of firearms while on the job and limiting law enforcement activities by the employees except under supervisory control, presumably unrestricted as to the issuance of summonses for traffic offenses.
The main issues raised by the petition are whether or not the grant of authority as peace officers by the amendment of the Public Authorities Law thereby exempts them from prosecution by the police and the District Attorney for carrying firearms, and assuming for argument that they are so exempted, whether' the administrative regulation of TBTA forbidding weapons on the job constitutes abuse of discretion.
As to the respondents, the Police Commissioner and the District Attorneys, without further discussion or citation, there is ho scope for judicial restraint anticipatorily and dismissal must follow.
As to the respondent, TBTA, as the employer, it comes down to whether or not there is demonstrated abuse of administrative discretion in the regulatory control as to possession of weapons to support judicial intervention. Absent that, there is no room for substitution of judicial discretion.
Beverting to the quoted statutes, although it is validly provided that these employees shall have peace officer powers, notably, they are neither named nor described in the so-called definitions contained in subdivision 33 of section 1.20 of the Criminal Procedure Law. Bather than definition that statute lists some other 21 named officers and occupations as peace officers.
The immediate issue here is not authorized powers of peace officers and consequent exemption from the Penal Law prohibiting possession of pistols. Simply and directly, is it unreasonable and arbitrary when the boss by directive says when and how and which employees may possess pistols at their work1? As to that, it could be said that here, in appearance, uniforms, wearing badges, by work title, in the vernacular, they look like cops. Becognizably, there might be some work involving law enforcement and crime control. TBTA says that most of their work is acting as toll booth collectors. They regulate traffic, but in New York City, today, a good deal of that activity has become the work of civilian traffic officers with limited summons-issuing power for traffic offenses.
Absent a showing of arbitrariness or caprice the will of the employer must prevail. Whatever difference of opinion there may be between court and TBTA, there is no proper basis for *933 the imposition of the judicial over the administrative discretion. That there is no administrative abuse is supported in judicial precedent.
The decision of the Appellate Division, Third Department, in Matter of Salata v. Tolman (38 A D 2d 991 [March, 1972]) is the guide for decision here. The employees there had a much better case. Probation officers assigned to the Criminal Court in Queens County sued (CPLR art. 78) to enjoin the enforcement of a written order of the Director of the Office of Probation that “ a probation officer shall not carry a firearm during duty hours, and shall not bring into or have such firearms in any court building, branch or facility of the Office of Probation.” The petitioners contended that as named exempted police officers they had an absolute and unconditional right to possess and carry firearms.
Reversing the lower court, the Appellate Division disagreed that petitioners had a vested right to possess or carry firearms and upheld the order of the Director of Probation, saying: “ Peace officers are exempt from the criminal responsibility imposed by section 265.05 of the Penal Law for the possession of fire arms without a license (Penal Law 265.20, subd. a, par. 1, cl. [a]), but this exemption cannot be construed as creating a vested right as suggested by petitioners. As employees of the Office of Probation, they are subject to and must abide by the rules and regulations resulting from the exercise of discretion of the respondents. * * * A rule regulating the carrying of firearms while on duty is a proper amd lawful exercise of the authority of respondents.” (Emphasis supplied.)
Constitutional and statutory provisions cited in the latter decision authorized administrative supervision of the courts, including probation officers. Similarly, the TBTA has full jurisdiction and control over all its projects (Public Authorities Law, § 552, subd. 2) and has the incidental power to appoint officers, agents and employees, subject, however, to the provisions of the Civil Service Law (Public Authorities Law, § 553, subd. 6).
Salata is significant here, too, because of the distinction between the probation officers and the employees involved here. Unlike probation officers whose status as peace officers is within statutory definition, these employees only have peace officer status “ while engaged in the performance or discharge of their duties ”. (L. 1973, ch. 1032.)
In 1960, in Anemone v. Kross (23 Misc 2d 186 [Spec. Term]) the plaintiff was a New York City correction officer who sought to enjoin both a departmental disciplinary proceeding and an *934 order directing him to surrender his revolver. The correction officer was listed as a peace officer in section 154 of the Code of Criminal Procedure, the antecedent of CPL 1.20 (suhd. 33). Because he had been found unqualified in the use of the revolver, he was ordered to surrender it until he achieved qualified status and he was restricted in its use to practice sessions. "When he failed to qualify, he was ordered to surrender the revolver. Justice Samuel M. Gold wrote: “ The statute requiring licensing does not apply to a peace officer who nevertheless has no absolute right to carry a revolver or firearms. The rules and regulations of the department govern the conduct of the correction officer as a peace officer, and he must yield to the conditions of his employment. The defendant’s administrative duty embraces the supervision of the members of the department and more particularly the conduct of a member who desires to carry a revolver, only by virtue of the department’s approval. Accordingly, in the circumstances set forth in the complaint the action of the defendant was not beyond [the] power and the area of the discretion confided to her.” (Emphasis supplied.)
The motion is denied as indicated and the proceeding is dismissed, no costs.